Hobart M. Conway, Jr. and Rebecca K. Conway v. Commissioner.
Conway v. Commissioner
Docket No. 584-80.
United States Tax Court
T.C. Memo 1982-358; 1982 Tax Ct. Memo LEXIS 388; 44 T.C.M. (CCH) 269; T.C.M. (RIA) 820358; June 24, 1982
*388 P purchased an aircraft in 1973, sold it in 1976, and purchased another aircraft on which he claimed an investment tax credit. P received income from his closely held corporation pursuant to an informal arrangement for the use of his aircraft. Held, P is not entitled to an investment tax credit since he failed to prove that the arrangement with the corporation was not a lease and that the lease met the requirements of sec. 46(c)(3)(B), I.R.C. 1954, relating to noncorporate lessors. Held, further, R had the burden of proving that P realized a taxable gain on the sale of the first aircraft, and he failed to carry that burden. William E. Frantz and Clarence H. Glover, Jr., 3390 Peachtree Road N. E., Atlanta, Ga., for the petitioners. Julian A. Fortuna, for the respondent. SIMPSON
*269 Memorandum Findings of Fact and Opinion SIMPSON, Judge: The Commissioner determined deficiencies in the petitioners' Federal income taxes of $2,025 for 1973 and $3,719 for 1976. The issues for decision are: (1) Whether section 46(e)(3) of the Internal Revenue Code of 1954, [1] relating to noncorporate lessors, denies the petitioners an investment tax credit for an aircraft which they purchased and allowed *389 their corporation to use under an informal arrangement; and (2) whether the petitioners are required to recognize a gain on the sale of an aircraft. Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioners, Hobart M. and Rebecca K. Conway, husband and wife, maintained their legal residence in Atlanta, Ga., at the time they filed their petition in this case. They filed their joint Federal income tax returns for 1973 and 1976 with the Internal Revenue Service Center, Chamblee, Ga.
Mr. Conway was a corporate executive, and in 1976, he was connected with three corporations: Conway Publications, Inc. (Publications), of which he owned 92 percent of the stock, Conway Research, Inc. (Research), of which he owned all of the stock, [2] and Conway Florida, Inc. (Florida), of which he owned 90 percent of the stock. These corporations were all engaged in the business of making economic studies and designs for airports and related developments and publishing magazines and books on such subjects. All corporations had their principal offices in Atlanta, *390 Ga., although Florida also maintained an office in Daytona Beach, Fla., in 1976. *270 According to certain returns, [3] the corporations reported the following amounts of gross receipts and taxable income: Publications
Research
Florida
Gross
Taxable
Gross
Taxable
Gross
Taxable
Year
Receipts
Income
Receipts
Income
Receipts
Income
1973
1974
$409,021
$ (28,717)
$32,923
$7,561 1975
1976
305,272
(18,566)
$93,268
$9,212 14,123
(5,069)
1977
368,997
(17,032)
26,390
(42)
3,480
(286) Mr. Conway reported the following amounts of salary from Publications: Year
Amount
1973
$25,000
1974
25,000
1975
28,333
1976
25,000
1977
35,000
For such years, he reported no salary from Research of Florida. Mr. Conway decided it would be helpful to have an aircraft *391 to use in his businesses. In 1973, he purchased a twin-engine Beech aircraft for $39,000, and in 1974, he had a radio installed in such aircraft at a cost of $1,300. There was no written agreement regarding the use of such aircraft in the businesses. However, Mr. Conway discussed with the bookkeeper of Publications the cost of the aircraft and its estimated useful life, and they decided that Publications should pay him $800 a month so that he could recover its cost over its useful life. Publications also paid all costs of maintaining and operating the aircraft. Mr. Conway was a pilot, and he always served as the pilot of the aircraft, although other employees of Publications did serve as copilot on occasion. Mr. Conway personally supervised the maintenance of the aircraft. In the course of a prior audit, the accounting department of Publications wrote to the Internal Revenue Service and stated: This is to confirm that this company during 1974 paid a monthly lease fee of $800.00 to Mr. H. McKinley Conway for the use of the airplane. [Emphasis added.] In December 1975, the petitioners made a deposit of $5,000 on a single-engine Mooney aircraft with Ray Bell, president of Bellcraft, *392 Inc. The purchase order for the Mooney aircraft indicated that its total cost was $44,000 -- $5,000 down and the balance to be payable not later than January 21, 1976. The purchase order did not indicate the existence of any trade-in arrangement, and Mr. Bell was not involved in any exchange of another aircraft for the Mooney aircraft. In January 1976, Mrs. Conway wrote a check for $39,000 to Bellcraft for the balance of the purchase price of the Mooney aircraft. In February 1976, Mr. Conway delivered the Beech aircraft to a man in Florida. Thereafter, the arrangement between Mr. Conway and Publications regarding the use of the Mooney aircraft was substantially the same as they had maintained with regard to the Beech aircraft, except that the monthly payment to Mr. Conway was reduced to $500. In 1978, Mr. Conway wrote to his accountant regarding the acquisition and use of the aircraft and said: when the company needed another airplane several years ago and the company did not have the money, I put up the cash. Because the amount was large, and the fact that I do not own all of Conway Publications, Inc., it seemed more prudent to buy the airplane in my name and lease it back. Also, *393 you may recall that I have been furnishing services and covering costs relative to the management and supervision of our flight operations. Small as they are, we take pride in our safety record which we maintain via systematic checks and service, updating pilot proficiency, and sound flight planning. In short, we try to handle our operations in a professional manner. [Emphasis added.] On their Federal income tax return for 1976, the petitioners reported that the Beech aircraft had been "traded," and they reported no gain or loss from the trade. During the course of an audit of the petitioners' 1976 return, Mr. Conway told the IRS that there was a 5-year lease of the Mooney aircraft to Publications. He also *271 told the agent that he was allowed a "trade-in allowance" of $40,000 on the Beech aircraft and that the basis of the Mooney aircraft was $26,842. At a later date, the petitioners' accountant also told the IRS that Mr. Conway had "traded an airplane with an adjusted bases [sic] of $22,842 and paid $4,000 to arrive at a basis for the new airplane of $26,847 [sic]." On their Federal income tax returns for 1973 through 1977, the petitioners reported the following amounts of income *394 and expenses relating to their aircraft: Interest
Net Income
Year
Income
Depreciation
Expense
or (Loss)
1973
$7,200
$4,833
$1,037
$1,330 1974
9,600
6,060
1,384
2,156 1975
9,600
6,060
1,499
2,041 1976
6,600
4,509
1,864
227 1977
3,000
4,368
(1,368)
For 1973, such information was reported as income of Conway Aviation on Schedule C. However, for 1974 through 1977, such information was reported as supplemental rental income on Schedule E. On their 1976 return, the petitioners claimed an investment credit of $2,867 based on the purchase of the Mooney aircraft. In his notice of deficiency, the Commissioner disallowed such credit on the ground that the petitioners failed to comply with the noncorporate lessor rules of section 46(e)(3). At trial, the Commissioner was allowed to amend his answer to claim an additional deficiency for 1976 based on his allegation that the petitioners had sold their Beech aircraft and that such sale resulted in a gain to be treated as ordinary income under section 1245. Opinion The first issue for decision is whether the Conways are entitled to an investment credit on their purchase of the Mooney aircraft. Section 38 allows a credit against tax for investments in certain depreciable property *395 in an amount determined under section 46. However, section 46(e)(3) provides, in part: (e) Limitations with Respect to Certain Persons. -- * * * (3) Noncorporate lessors. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. The petitioners have the burden of proving that they are entitled to the credit. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering [3 USTC P1164], 290 U.S. 111 (1933); Bloomberg v. Commissioner [Dec. 37,285], 74 T.C. 1368 (1980). In their attempt to meet such burden, the petitioners argue that their agreement with Publications was not in *396 fact a lease and that they were in the trade or business of providing a transportation service to the corporation. They maintain that they transferred more than possession of the aircraft to the corporation; in addition, Mr. Conway served as the pilot and supervised the maintenance of the aircraft. However, the record fails to support adequately their position. In general, a lease of tangible personal property is a contract by which the owner of such property grants to another the right to possess, use, and enjoy it for a specified period of time in exchange for a periodic payment of a stipulated price referred to as rent. See Black's Law Dictionary, p. 800 (5th ed. 1979). Since the arrangement between the petitioners and Publications was informal and not in writing, it is difficult for us to determine at this time the precise terms of the arrangement, but when we examine and weigh all the evidence, it is clear that the petitioners have failed to prove that the arrangement was not a lease. In several occasions, both Mr. Conway and the corporation referred to the arrangement as a lease, and they *272 used that term before this litigation arose and before they appreciated the consequences *397 of a lease of the aircraft. Moreover, the amount of the payments to Mr. Conway was fixed with reference to the cost and useful life of the aircraft; there is no evidence that such payments were to compensate him for his services as a pilot or for the maintenance of the aircraft. There is nothing to indicate that when he performed those services, he was acting in a separate trade or business rather than as an employee of Publications. Indeed, the fact that other employees of Publications occasionally served as the copilot tends to suggest that Mr. Conway was acting in his capacity as an employee of Publications when he served as the pilot of the aircraft. Under these circumstances, we must treat the arrangement as a lease subject to the requirements of section 46(e)(3). Ridder v. Commissioner [Dec. 37,944], 76 T.C. 867 (1981); Bloomberg v. Commissioner, supra; McNabb v. United States, an unreported case ( W.D. Wash., June 2, 1980, 81-1 USTC P9143, A.F.T.R. 2d 81-513). In Ridder v. Commissioner, supra, we were also concerned with the applicability of section 46(e)(3), and we observed: In general, Congress was concerned that individuals might be tempted to use investment credits to *398 finance the acquisition and leasing of depreciable property as tax shelters. S. Rept. 92-437 (1971), 1972-1 C.B. 559, 583. * * * [76 T.C. at 872.] We pointed out that to prevent such possibility, Congress adopted the specific requirements set forth in section 46(e)(3). Here, we have no reason to believe that the petitioners were attempting to design any "tax shelter," but we must apply the statutory requirements to the record made by them. The facts are that the petitioners leased the aircraft to Publications, and they have offered no evidence to show that the lease satisfied the requirements of section 46(e)(3)(B). Accordingly, we must conclude and hold that they are not entitled to an investment credit by reason of the purchase of the Mooney aircraft. The second issue for decision is whether the petitioners sold the Beech aircraft and must recognize a gain as a result of such sale. The Commissioner takes the position that the record reveals that they did sell such aircraft for $40,000 and that the gain realized on such sale must be recognized as ordinary income under section 1245. Since this issue was not raised in the notice of deficiency, the Commissioner has the burden of *399 proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Jasionowski v. Commissioner [Dec. 33,828], 66 T.C. 312, 318 (1976). In support of his position that the disposition of the Beech aircraft did not qualify as a tax-free exchange under section 1031, the Commissioner called Mr. Bell, the salesman of the Mooney aircraft, who testified that his records indicated no trade-in and that he had no recollection of an exchange of aircraft. At one point, Mr. Conway himself testified that he "sold" his Beech aircraft to an individual in Florida and bought the Mooney aircraft from a factory in Texas through Mr. Bell. Such evidence is sufficient to establish that there was no exchange of the Beech aircraft for the Mooney aircraft and that there was a sale of the Beech aircraft. Swaim v. United States [81-2 USTC P9575], 651 F. 2d 1066 (5th Cir. 1981). Yet, for the Commissioner to prevail on this issue, he must also establish the amount realized as a result of the sale of the Beech aircraft. Sec. 1001. He produced no direct evidence showing the amount received by the petitioners for the sale of such aircraft; instead, he relied on the statement of Mr. Conway that he had received a credit *400 of $40,000 in exchanging the Beech aircraft for the Mooney aircraft and the statement of the accountant that Mr. Conway had paid an additional $4,000 to purchase the Mooney aircraft. Since we have already concluded that there was no exchange of aircraft, these statements reflect some confusion or failure of memory as to what actually happened; clearly, such statements are insufficient to carry the Commissioner's burden of proving the amount realized on the sale of the Beech aircraft. Consequently, we must hold that the Commissioner has failed to carry his burden of proving that the petitioners realized a gain on the sale of the Beech aircraft. Decision will be entered for the respondent for the amounts set forth in the notice of deficiency. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Publications was once known as Conway Research, Inc. However, at some time before 1976, its name was changed to Conway Publications, Inc., and in 1976, a new corporation was formed and named Conway Research, Inc. For convenience, we shall refer to Conway Publications, Inc., as Publications at all times, although it may have borne the earlier name at some of the times.↩
3. We have no records of any returns filed by Publications for 1973 and 1975, for Research for 1973, 1974, and 1975, and for Florida for 1975.↩